IRA C. CANFIELD, WM. B. CANFIELD, THOMAS
WELSH AND JAMES R. ARMIGER *vs.* SAMUEL
O. MCILWAINE and CLAUDIUS L. GOODWIN, use
of ALGERNON R. WOOD, Trustee.

*Prayers and Instructions — Assignment of a Chose
in Action—Filling up a Blank Endorsement—
Practice.*

A due bill was endorsed in blank by the payee, in December, 1866, and
delivered to M, who in April, 1867, formed a partnership with G, when
the due bill passed to the firm and became part of the partnership effects.
In November, 1867, M & G, for the benefit of their creditors, made an
assignment to W, and delivered to him as part of their assets the due
bill, with the blank over the name of the payee filled up thus: "pay
M, G & Co., or order," and endorsed by them. The makers of the due
bill had notice of its assignment by the payee, and that M & G were the
holders of it. It was in proof that the payee of the due bill assigned it
to M as a margin on a contract for the purchase and sale of gold on
account of the former, to be made by the latter as broker—the agree-
ment being that if the assignor failed to make good any default, M
would have the right to rely on the due bill for indemnity—and that
no default was made. After the delivery of the due bill to W, suit was
brought for his use, in the names of M & G, against the makers. At
the instance of the plaintiffs, the jury were instructed that if they found
that the due bill was signed by the defendants and endorsed in blank by
the payee, and delivered so endorsed to M, and that the endorsement
was filled up by him, and that the defendants were notified of the assign-
ment, the plaintiffs were entitled to recover. HELD:

That the instruction was erroneous — there being proof impeaching the
assignment to M, G & Co., it should have been left to the jury to pass
upon the *bona fides* of the transaction, and as the plaintiffs claimed under
the assignment, they were not entitled to recover unless it was *bona fide.*

In an action on a due bill, brought in the name of the assignees against
the makers, the allegation in the *nar.* that on or about December 6th,
1866, the payee of the due bill endorsed, assigned, transferred and deliv-
ered it to the plaintiffs, and that on or about May 25th, 1867, the plain-
tiffs gave due notice thereof to the defendants, need not be proved as
laid—it is only necessary to prove that the assignment was made before
suit brought.

APPEAL from the Superior Court of Baltimore City.

The facts of the case are sufficiently presented in the opinion of the Court. The *nar.*, beside the common money counts, contained the following special count, being the seventh:

That the defendants, on the 23d day of May, 1866, by their promissory note or due bill, now overdue, promised to pay to one Samuel Turbutt $1000, on demand, but did not pay the same. That on or about December 6th, 1866, said Samuel Turbutt endorsed, assigned and transferred said due bill to said plaintiffs, or order, and delivered the same; and that on or about May 25th, 1867, said plaintiffs gave due notice to said defendants of said endorsement, transfer and delivery, and that they were the holders thereof, and demanded payment of the same, which was refused by the defendants.

The plaintiffs asked the following instruction:

If the jury find that the due-bill offered in evidence was signed by the defendants, and endorsed in blank by Samuel Turbutt, the person therein named, and that he delivered the same, so endorsed in blank, to the plaintiff, McIlwane, and that the words, " Pay McIlwane, Goodwin & Co., or order," were written by the plaintiff, McIlwane, over said blank endorsement, before the institution of this suit, and that before the institution of this suit the defendants were notified that the said due-bill had been assigned to the plaintiffs, then the plaintiffs are entitled to recover so much as the jury may find to have remained unpaid of said due-bill, at the time the defendants received notice of the assignment thereof to the plaintiffs, not exceeding the amount that the jury may find to have been due from the said Turbutt to the said plaintiffs.

The defendants offered the following prayers:

1. That there is no legal assignment of said due-bill by Samuel Turbutt to the plaintiff as required by the Code, Art. 9, sec. 1, and therefore the plaintiffs cannot recover in this case.

2. And if the jury shall find the making and endorsement of the due-bill, and its delivery to said McIlwaine, then there is no evidence in this cause that the said due bill was assigned and transferred to the plaintiffs, as alleged in the seventh count of their declaration, and the plaintiffs cannot recover in this action.

3. If the jury find the making of the due bill in this case, and that the name of Turbutt was written thereon by him, on the 6th of December, 1866, and then and there that said due bill was delivered to the plaintiff, S. O. McIlwaine, then it was not competent for the said plaintiff to write, over the said signature, the words that are so·written, and the plaintiffs cannot recover.

4. If the jury find, from the evidence, that the plaintiff McIlwaine received the due bill offered in evidence, on December 6th, 1866, and the receipt given therefor, for the purposes therein stated, and that the assignment for the benefit of creditors, as shown in the evidence, was made and delivered, then the plaintiffs cannot recover in this case.

5. And further, if the jury find the facts contained in the first prayer, and shall further find that on the 20th day of November, 1867, the said plaintiffs made the assignment offered in evidence, and delivered all their assets to said trustee, the due bill in this case being included in such delivery, then the plaintiffs cannot recover in this case.

6. That, in order to a recovery in this case by the plaintiffs, under their seventh count in the declaration, it is necessary for them to prove the assignment from Turbutt to themselves, in manner and form as therein stated, and that no such evidence has been offered.

7. And that the plaintiffs cannot recover, under their seventh count, because the same is defective in not averring that said assignment was made for a sufficient consideration, passing between the plaintiffs and Turbutt.

8. That there is no sufficient evidence in this cause that a sale was duly made of gold for Turbutt by the plaintiffs on

Canfield, *et al. vs.* McIlwaine, *et al*, use of Wood, Trustee.

the 8th of April, 1867, and that a loss resulted therefrom to the plaintiffs, for which they are entitled to hold Samuel Turbutt responsible, and hold the said due bill as a lien therefor.

The Court gave the instruction asked by the plaintiffs, but refused the prayers of the defendants, and the verdict and judgment being for the plaintiffs, the defendants appealed.

The cause was argued before STEWART, MAULSBY, BRENT, MILLER and ALVEY, J.

*B. C. Barroll,* for the appellants.

*William A. Fisher* and *Charles Marshall,* for the appellees.

MAULSBY, J., delivered the opinion of the Court.

This suit is brought on a due bill, made by the appellants, (defendants below,) payable to Samuel Turbutt, and by him assigned, in blank, in December, 1866, and delivered to S. O. McIlwaine, who, in April, 1867, formed a partnership with Claudius L. Goodwin, when the due bill passed to the firm, and became part of the partnership effects. In November, 1867, McIlwaine delivered the due bill to Algernon R. Wood, for whose use the suit is brought, with the blank over the name of Turbutt filled up, " pay McIlwaine, Goodwin & Co., or order." The defendants had notice of the assignments. After the delivery to the *cestui que use,* the suit was brought. The narr. contains the money counts and also a count stating that Turbutt assigned the due bill to the plaintiffs on or about December, 1866. The plaintiffs' proof is: that the partnership between the legal plaintiffs, was formed in April, 1867; that McIlwaine received the due bill from Turbutt, as margin on a contract for the purchase and sale of gold, to be made by McIlwaine, as broker, for account of Turbutt, which contract, in writing, is set out; that Turbutt was indebted to McIlwaine individually, but in what amount cannot be stated or approximated; that after the formation of the partnership, Turbutt

Canfield, *et al.* vs. McIlwaine, *et al.*, use of Wood, Trustee.

had a transaction with the firm and owed the firm a balance of $419.00. The written agreement is to the effect, that Turbutt was to deposit, with McIlwaine, ten per cent on the par value of the gold to be bought for him and to keep the deposit equal to ten per cent on the par value, as the same might fluctuate at the stock exchange, whenever called upon to, do so, and the due bill was assigned on account of this deposit.

For defendants, Turbutt proved that at the time of the trial he was the owner of the due bill; that he assigned it to McIlwaine, to be a margin on any gold transactions he might have with him; that he had a transaction, which resulted in a profit to him, which McIlwaine paid him; that he had no recollection of ever having had any gold transactions with McIlwaine, Goodwin & Co.; that when they failed they owed him $85 or $90, for a draft collected by them; that when he assigned the due bill to McIlwaine, the agreement was, that if he failed to make good any default, he (McIlwaine) would have the right to rely on the due bill for indemnity; that he never authorized McIlwaine to assign the due bill, except in case of default and that he never became indebted or made default.

The plaintiffs prayed the Court to instruct the jury, that if the jury found that the due bill was signed by defendants and endorsed in blank by Turbutt, and delivered so endorsed to McIlwaine, and that the endorsement was filled up by him, and that defendants were notified of the assignment, the plaintiffs were entitled to recover and the Court granted the prayer.

To entitle the plaintiffs to a verdict, they must show a title to the cause of action, and their title must be in accordance with the terms of the Code, which authorize them as assignees of the *chose in action,* to sue in their own name. Those terms are that they be *bona fide* entitled thereto, by assignment in writing, &c. They cannot maintain their suit at all, unless they be *bona fide* entitled. The instruction of the Court below is that they could recover without any reference to the *bona fides* of their title. It is, that if the jury find the facts enumerated, to wit: defendants' signatures, endorsement in blank

Canfield, *et al. vs.* McIlwaine, *et al.*, use of Wood, Trustee.

by Turbutt, delivery by him to McIlwaine, filling up of endorsement by McIlwaine and notice of assignment to defendants, the plaintiffs can recover. If there had been no proof, attacking the *bona fides* of the assignment to McIlwaine, Goodwin & Co., the instruction would have been sustained, because in the absence of proof the presumptions are in favor of the *bona fides,*—it will be presumed—and the requirements of the statute would be satisfied by the legal presumptions. And in that case, the same presumptions would have supplied the words, omitted in the expressed language of the instruction. But there is proof, which, if believed by the jury, would shew that the assignment to McIlwaine, Goodwin & Co., was *mala fide*. The assignment by Turbutt was to McIlwaine. But, the assignment in blank authorized McIlwaine to pass it to any other party, and authorized the holder, whoever he be, to fill up the assignment to himself. The Court says in *Chesley vs. Taylor*, 3 *Gill*, 256, "Mr. CHITTY, in his treatise on Bills, says, a blank endorsement gives the holder, as well as any other person to whom it may be afterwards transferred, the power of instituting himself assignee of the beneficial interest in the bill, by filling it up payable to himself, which he may do at the time of trial." " This familiar and established doctrine is directly applicable to the case before us. The rights of the *holder* of a bond or single bill, delivered and endorsed in blank are, in this respect, similar to those of the holder and endorser of a promissory note, for he possesses, by force of the endorsement and delivery, the unquestionable power, by writing over the name of the *assignee*, (misprint for assignor,) to make a complete assignment." The result is that intermediate transfers, between the first assignee and any subsequent holder, who may fill up the blank endorsement with a complete assignment to himself, may take place in fact, and their conformity to the requisites of the statute, that they shall be in writing signed by the parties, will be presumed. But whilst the holder is authorized to complete the assignment on which he founds his right to sue, *that assignment,* so completed by

Canfield, *et al. vs.* McIlwaine, *et al.*, use of Wood, Trustee.

the holder, must be *bona fide* or he cannot maintain his action.

In this case the holders, who exercised their right of filling up the assignment to themselves, are McIlwaine, Goodwin & Co. McIlwaine, who, by defendants' proof, could not have, *bona fide,* made any other disposition of the *chose in action* than to return it to Turbutt, to whom, by that proof, it belonged, and who was the original assignee of Turbutt, is the same person who, as member of the firm of McIlwaine, Goodwin & Co., filled up the assignment to that firm. The *bona fides* of this transaction should, we think, have been put, by the instructions, to the jury.

We shall dispose, briefly, of the substance of the questions presented by the defendants' prayers.

The allegation of time in the seventh count of the narr., " on or about," is equivalent to laying it under a *videlicet,* and is not necessary to be proved as laid. All that was required to be proved was, that the assignment was made before suit brought, and we concur, therefore, with the Court below in overruling the defendants' sixth prayer.

We do not concur in the view presented by the defendants, in their seventh prayer, that the narr. should have alleged that the assignment was made for a sufficient consideration.

The consideration of the assignment was not, as such, a matter in issue between the assignee and the makers, but the *bona fides* of the title of the assignee.

It is not McIlwaine, the original assignee, who seeks to recover in this suit. The legal plaintiffs are the assignees of McIlwaine. They filled up the assignment to themselves, and claim under that assignment, and they cannot recover unless that assignment were *bona fide.* It is the *bona fides* of that on which the right to maintain this suit depends, and which ought, in our opinion, to have been left, by the instructions, to the jury, on all the evidence.

Article 9, section 1, of the Code does not require, but authorizes, the assignee of a *chose in action* to sue in his own

name. In this case it was transferred by McIlwaine, Goodwin & Co., by blank endorsement, to Wood. He could fill up the assignment to himself and sue in his own name, or sue, as in this case, in the name of his assignors, for his use. The contrary position, argued by appellants' counsel, is not maintainable.

*Judgment reversed,*
*and a new trial awarded.*

